## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARCUS FLORES, ADAM YATES, and EDWARD GARCIA, on behalf of themselves and all others similarly situated, | Case No.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | **DEMAND FOR JURY TRIAL** |
| v. | |
| FCA US, LLC, | |
| Defendant. | |

## PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Marcus Flores, Adam Yates, and Edward Garcia bring this action against Defendant FCA US LLC, ("Defendant" or "FCA"), by and through their attorneys, individually and on behalf of all others similarly situated, and alleges as follows:

### INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former owners of model year 2015-2017 Jeep Renegade and Ram ProMaster City vehicles (hereinafter referred to collectively as the "Class Vehicles"). The Class Vehicles were designed, manufactured, marketed and warranted by Defendant. Upon information and belief, the Class Vehicles

1

contain a defectively designed and manufactured radiator cooling fan bearing Part No. 68247205AA (hereinafter referred to as the "Original Fan").[1]

2.    The internal mechanism of the Original Fan is prone to premature failure, which prevents the engine from properly cooling (the "Defect"), particularly when the vehicle is idling or operating at slower speeds. Because the Fan is essential to safe operation of the Class Vehicles, when the Fan fails, the Class Vehicles are typically inoperable until it is replaced.

3.    Defendant at all times relevant knew, or through the exercise of reasonable care had reason to know, that the Fans contain the Defect. Indeed, as the result of the Defect, Defendant was forced to redesign the radiator cooling fans (replacing Part No. 68247205AA with Part No. 68360299AA) of the Class Vehicles (hereinafter, Part No. 68360299AA is referred to as the "Replacement Fan").

4.    Among other changes, the Replacement Fan features a heat shield apparently designed to insulate and protect the radiator cooling fan from heat-related damage. Despite Defendant's knowledge of the Defect, Defendant forced Plaintiffs and the Class to pay the product and repair costs for the Replacement Fans rather than honor its commitment to consumers. These costs ranged from approximately

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

$200 for Replacement Fans (for parts only) to over $1200 for parts and labor through Defendant's dealerships.

5.      Cooling fans are an essential element of the engine cooling system of the Class Vehicles. Engine cooling is critical to safe operation of the Class Vehicles and is severely compromised when the Original Fans fail. When the Original Fans fail, engine cooling does not occur in the designed manner, substantially increasing the risk of engine overheating.

6.      Furthermore, the Defect in the Original Fans causes excessive and premature wear of the engine, potentially resulting in catastrophic engine failure and/or risk of overheating and vehicle fire. Complaints made to the National Highway Traffic Safety Administration (¶¶ 64, 65, *infra*) reference multiple incidents of smoking and fire caused by the Defect. Indeed, the following photograph of a 2015 Jeep Renegade shows smoke coming from the Original Fan just before the Original Fan caught fire in the driveway of the consumer.



7.     Defendant misrepresented the standard, quality and grade of the Class

Vehicles and knowingly, actively, and affirmatively omitted and/or concealed the

existence of the Defect in the Original Fans to increase profits by selling additional

Class Vehicles. Knowledge and information regarding the Defect and associated

safety risks were in the exclusive and superior possession of Defendant and its

dealers, and this information was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the defect through due diligence.  Based on pre-production testing, pre-sale durability testing, design failure mode analysis, bench testing, warranty and post-warranty claims, and consumer complaints to dealers and NHTSA, inter alia, Defendant was aware of the Defect in the Original Fans and materially omitted the existence of and/or fraudulently concealed the defect from Plaintiffs and members of the Classes.

8.      Plaintiffs and members of the Classes (defined below) assert claims against Defendant for fraud, negligent misrepresentation, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, breach of express and implied warranties, and violations of consumer statutes in New Mexico Unfair Trade Practices Act, Florida and California.

9.      As a direct result of FCA's wrongful conduct, Plaintiffs and members of the Classes have been harmed and are entitled to actual damages, including damages for the benefit of the bargain they struck when purchasing their vehicles, the diminished value of their vehicles, statutory damages, attorneys' fees, costs, restitution, and injunctive and declaratory relief. Specifically, Plaintiffs seek: immediate installation of Replacement Fans for all Class Members whose Original Fans possess the Defect, as well as reimbursement for parts and labor costs incurred by Class Members who paid to have their Original Fans replaced, as well as

replacement of the engines/transmissions and components materially damaged by the Defect; provision of a temporary replacement vehicle while repair of the Defect is pending; and/or buyback of the Class Vehicles; compensation for any additional sums spent on any repairs to address the Defect; restitution for purchase of extended warranties that will go unused; compensation for the increased loss in value and depreciation of the Class Vehicles due to widespread knowledge of the Defect; and punitive damages for FCA's knowing fraud that put drivers and members of the public nationwide at risk.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

11.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Defendant maintains its principal place of business in this District,

because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and because Defendant conducts a substantial amount of business in this District. Accordingly, Defendant has sufficient contacts with this District to subject Defendant to personal jurisdiction in this District and venue is proper.

## PARTIES

**Plaintiff Marcus Flores**

12.     Plaintiff Marcus Flores is a citizen of Virginia and currently resides in Hampton, Virginia. Plaintiff is in the United States military and moved to Virginia in December 2018.  At all times pertinent to this Complaint, Plaintiff was a resident of Alamogordo, New Mexico.

13.     Plaintiff purchased a new 2015 Jeep Renegade on or about April 10, 2015 from Sierra Blanca Chrysler Dodge Jeep Ram, an authorized Jeep dealer and repair center located in Ruidoso, New Mexico.

14.     Plaintiff purchased (and still owns) this vehicle, which is used for personal, family and/or household uses. His vehicle bears Vehicle Identification Number: ZACCJBBT2FPB20298.

15.     On or about early August 2017, when Plaintiff's vehicle had approximately 39,000 miles on the odometer, the Original Fan began to manifest the Defect.  Plaintiff became aware that his Original Fan was failing because it began to

visibly wobble and make irregular noise. Additionally, smoke was visibly emanating from the engine compartment of his vehicle.

16.     Within one day of the Original Fan manifesting the Defect, Plaintiff took his vehicle to Jack Key Chrysler Dodge Jeep Ram in Alamogordo, New Mexico and explained to the service department that the Original Fan was not functioning and required replacement.  Plaintiff requested that Jack Key replace the Original Fan under warranty, but his request was denied.  Plaintiff was quoted a price in excess of $500 to replace his defective Original Fan with the redesigned Replacement Fan. Additionally, Plaintiff contacted the Jeep national customer service line for Defendant, at least twice in mid-August requesting information about when parts would be available, as well as expressly requesting that Jeep replace his defective Original Fan pursuant to the warranty.  Plaintiff was informed that Defendant would not replace the defective Original Fan pursuant to the warranty and, to add insult to injury, that no Replacement Fans were available at the time.

17.     Because Plaintiff's demands to replace the Original Fan pursuant to Defendant's warranty were denied, Plaintiff located and purchased an OEM version of the Replacement Fan bearing parts number 68360299AA from MB Auto, an online retailer, for $214.50.  On August 14, 2017, when Plaintiff purchased the replacement, Replacement Fans were on back order so Plaintiff was forced to wait until late September for the Replacement Fan, which he installed himself.  This

8

backorder was undoubtedly caused by the sheer number of Replacement Fans requested, which is unsurprising given the demand for Replacement Fans stemming from the Defect.  Plaintiff has had no difficulties with the Replacement Fan since he installed it in September 2017.

18.     Plaintiff Flores has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

19.     Neither Defendant, nor any of its agents, dealers or other representatives informed Plaintiff of the existence of the Defect in the Original Fan prior to purchase.

**Plaintiff Adam Yates**

20.     Plaintiff Adam Yates is a citizen of Florida.  Plaintiff currently resides in Tamarac, Florida, and has at all times pertinent to this Complaint.

21.     Plaintiff purchased a new 2015 Jeep Renegade on or about March 12, 2016, from Arrigo Dodge Chrysler Jeep Ram Sawgrass, an authorized Jeep dealer and repair center located in Tamarac, Florida.

22.     Plaintiff purchased (and still owns) this vehicle, which is used for personal, family and/or household uses by his daughter.  His vehicle bears Vehicle Identification Number: ZACCJABT1FPC19401.

9

23.    On or about January 7, 2019, when Plaintiff's vehicle had approximately 40,100 miles on the odometer, the Original Fan began to manifest the Defect.  Plaintiff's daughter was driving the vehicle home from school at Florida Atlantic University in Boca Raton, and heard an irregular noise.  Plaintiff's daughter noticed that the fan/radiator area appeared to be shaking and/or wobbling.  But it was not until the next day, January 8, 2019, that Plaintiff's daughter became fully aware that the Original Fan was failing when the vehicle began to overheat and the check engine light illuminated.

24.    The next day, Plaintiff took the vehicle to Arrigo Dodge Chrysler Jeep Ram Sawgrass in Tamarac, Florida and explained to the service department that the Original Fan was not functioning and required replacement. Plaintiff requested that Arrigo Dodge Chrysler Jeep Ram Sawgrass replace the Original Fan under warranty, but his request was denied. Because replacement was necessary for the vehicle to function properly, Plaintiff paid $634.95 to replace his defective Original Fan with the redesigned Replacement Fan, as well as replacing the fuse relevant to the cooling fan.

25.    Plaintiff Yates has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

26.    Neither Defendant, nor any of its agents, dealers or other representatives informed Plaintiff of the existence of the Defect in the Original Fan prior to purchase.

**Plaintiff Edward Garcia**

27.    Plaintiff Edward Garcia is a citizen of California and currently resides in Chino, California. At all times pertinent to this Complaint, Plaintiff was a resident of the county of San Bernadino, California.

28.    Plaintiff purchased a new 2015 Jeep Renegade on or about October of 2015 from Premier Chrysler Jeep Dodge Ram, an authorized Jeep dealer and repair center located in West Covina, California.

29.    Plaintiff purchased (and still owns) this vehicle, which is used for personal, family and/or household uses. His vehicle bears Vehicle Identification Number: ZACCJBCT7FPB91561.

30.    On or about November 2017, when Plaintiff's vehicle had approximately 43,000 miles on the odometer, the Original Fan began to manifest the Defect. Plaintiff became aware that his Original Fan was failing because it began to visibly wobble and make irregular noise.

31.    That same day, Plaintiff called Premier Chrysler Jeep Dodge Ram's service department and was informed that the Replacement Fan was on national

11

backorder for three months. Plaintiff inquired whether the part was known to be defective and whether the replacement would be covered under his warranty. The service department representative answered both questions in the negative. Plaintiff was quoted a price of approximately $500 to replace his defective Original Fan with the redesigned Replacement Fan when the part eventually became available. Plaintiff requires regular use of his vehicle for work and personal needs and therefore found this timeframe unacceptable. As a result, Plaintiff began a quest to find the Replacement Fan. Plaintiff called another local dealer who also did not have the Replacement Fan in stock.

32.     Plaintiff searched extensively online and put a notification on eBay to inform him if the part became available on eBay. Sometime later, Plaintiff received a notification from eBay that an OEM Replacement Fan was available, and he immediately purchased it for a price of $125. Upon receipt, in March 2018, Plaintiff installed the Replacement Fan himself and it has properly functioned since that time.

33.     Plaintiff Garcia has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

34.    Neither Defendant, nor any of its agents, dealers or other representatives informed Plaintiff of the existence of the Defect in the Original Fan prior purchase.

## Defendant

35.    Defendant FCA U.S., LLC is a Delaware limited liability company with its principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan. The Jeep and Ram vehicles at issue here are part of the FCA U.S., LLC family of companies, which is, in turn, part of Fiat Chrysler Automobiles N.V.

36.    Fiat Chrysler Automobiles N.V. is a Dutch corporation with its headquarters in London, England. FCA U.S., LLC engages in interstate commerce by selling vehicles through its authorized dealers located in every state of the United States, including within this District.

37.    At all times relevant to this action, Defendant and/or its agents manufactured, distributed, sold, leased, and warranted the Class Vehicles throughout the United States. Defendant and/or its agents designed, caused, manufactured, and/or installed the Defect in the Class Vehicles. Defendant and/or its agents also developed and disseminated the owner's manuals, warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.

13

## FACTUAL ALLEGATIONS

### A. The Cooling Fan Defect

38.     FCA designs, engineers, manufactures and sells vehicles under the Chrysler, Jeep, Dodge, Ram, Fiat and Maserati brands in this District and throughout the United States. FCA manufactures, distributes, and sells motor vehicles and parts through its network of authorized motor vehicle dealers.

39.     As of 2017, FCA was the eighth largest automaker in the world by unit production.

40.     During the relevant time period, FCA produced the Jeep Renegade in four model types: the Sport, Latitude, Limited and Trailhawk, with prices ranging from approximately $19,000 to over $30,000.

41.     During the relevant time period, FCA also produced the Ram ProMaster City in four model types: the Tradesman Cargo, Tradesman Cargo SLT, City Wagon, and Wagon SLT, with pricing ranging from approximately $24,000 to $27,000.

42.     Upon information and belief, during the relevant time period the Jeep Renegade and Ram ProMaster City both featured the Original Fan identified as part number: 68247205AA. Pictures of the front (Figure 1) and back (Figure 2) of the Original Fan (68247205AA) appear below:

14



*Figure 1*



*Figure 2*

43.     The Original Fan was subject to thousands of premature failures, as evidenced by the substantial and long national backorder that existed in 2017. Consumers faced with Original Fan failures have expressed tremendous frustration and expounded on theories regarding the reasons for the failure.  The following are exemplars of photos posted online regarding this issue:







44.     Photos of the front (Figure 3) and rear (Figure 4) of the Replacement Fan, demonstrate that, among other changes, Defendant included a metal heat shield in the redesign (see red arrow):



**Figure 3**



18

*Figure 4*

## B. Defendant's Knowledge of the Defect

45.    Defendant has received numerous complaints about the Defect for years and has failed to take action to remedy the Defect or acknowledge that the Original Fan possessed a latent defect. Defendant's failure to properly address the Defect has resulted in substantial backorders. The following August 2017 complaint filed with NHTSA pertaining to the Ram ProMaster City makes clear the pervasiveness of the Defect, indicating that 3,000 fans were needed and unavailable:

> NHTSA ID Number: 11020429
> Complaint Filed: August 29, 2017
> Consumer Location: Los Angeles, CA
>
> HAD VEHICLE SERVICED FOR A COOLING FAN RELAY AFTER VEHICLE DISPLAYED A P0481 TROUBLE CODE. DEALER SERVICED AND REPLACED FAN RELAY. VEHICLE OVERHEATED APPROXIMATELY 100 MILES LATER DUE TO A DEFECTIVE COOLING FAN. THE FAN MELTED AND SMOKED AND CAUSED THE VEHICLE'S TEMPERATURE TO RISE RAPIDLY. DEALER INFORMED ME THAT THE PART WAS ON NATIONAL BACKORDER AND THAT 3,000 VEHICLES ARE CURRENTLY WAITING TO BE SERVICED WITH THIS PARTICULAR PART DUE TO IT'S HIGH RATE OF FAILURE. ESTIMATED REPAIR TIME OF 2 MONTHS. STILL WAITING FOR PART TO GET DELIVERED. THE PRESENCE OF SMOKE UNDER THE HOOD AND UNUSUALLY HIGH DEMAND FOR REPAIR INDICATES TO ME THAT CLEARLY THIS SHOULD BE A RECALL.

46.    Owners of other FCA vehicles have also publicly complained to the United States government about the defect in other Jeep models with the same or similar fan design for years:

Date Complaint Filed: 11/17/2014
Date of Incident: 09/05/2014
NHTSA ID Number: 10658557
Consumer Location: HUMAROCK, MA
Model: JEEP GRAND CHEROKEE 2011

SUMMARY:

BOUGHT THIS VEHICLE IN JUNE 2014 WITH 36,700 MILES ON IT FROM
SOMERSET JEEP IN SOMERSET MA. 1ST ISSUE WAS CAR WAS HAVING
TROUBLE STARTING. TAKEN TO QUIRK JEEP IN MARSHFIELD MA ON
SEPTEMBER 5TH ISSUE WAS FUEL PUMP CIRCUIT DOES NOT POWER UP
IN TIPM INSTALLED RELAY HARNESS AND FUSE STARTS FINE NOW.
COST IS $375.68, WHICH I HAD TO PUT ON MY CREDIT CARD. 2. CAR
STARTS SMOKING, WHICH TERRIFIES ME AND MY 7 YEAR OLD SON
FOR FEAR OF THE JEEP BLOWING UP OR CATCHING ON FIRE! SO I HAVE
TO HAVE IT TOWED TO QUIRK BY AAA ON THURSDAY OCTOBER 16TH.
THEY TELL ME THAT IT IS A PROBLEM WITH THE MODULE IN THE FAN.
THE WHOLE FAN HAS TO BE REPLACE FOR $1000.00. DON'T GET CAR
BACK TIL MONDAY NIGHT OCTOBER 20TH. IT ISN'T COVERED UNDER
WARRANTY AND I CAN'T GET A RENTAL CAR UNLESS I PAY FOR IT. I
CAN?T WORK OR DO ANYTHING! QUIRK GAVE ME A BREAK AND ONLY
CHARGED ME $400.00 BUT THAT IS STILL A LOT OF MONEY FOR A
SINGLE MOM WHO WAS WITHOUT HER CAR FOR ?4 DAYS. 3.
WEDNESDAY OCTOBER 22ND MY CHECK ENGINE LIGHT COMES ON.
THE ISSUE IS EVAP LEAK, STAR CASE OPEN FOR FUEL FILLER TUBE.
ORDERED FILLER TUBE AS NOT IN STOCK. QUIRK SAYS THEY WILL
HELP OUT AGAIN A LITTLE, BUT CHARGE IS GOING TO BE AROUND
$400.00 BUT WON'T KNOW UNTIL IT GETS FIXED SOMETIME NEXT
WEEK AND IT TAKES ABOUT 2 HOURS FOR REPAIR. MORE TIME LOST
FROM WORK. 4. NOVEMBER 16TH---CAR WILL NOT START. IT WILL NOT
TURN OVER OR MAKE ANY NOISE. TRIPLE A CAME OUT TO THE HOUSE,
GOT IT STARTED ONCE AND THEN IT SHUT OFF AND WOULD NOT
START AGAIN. AAA GUY SAID IT IS NOT THE BATTERY. CAR BEING
TOWED TO QUIRK JEEP RIGHT NOW ON 11 17 14 AT NOON. QUIRK SAYS
'NO IDEA WHEN THEY CAN LOOK AT' MY JEEP! I PAY $434.37 A MONTH
FOR MY JEEP LOAN! CAR HAS ABOUT 47,000 MILES ON IT NOW AND I
AM TERRIFIED TO DRIVE IT FOR FEAR IT WON'T START! I CAN'T WORK.
I HAVE NO MONEY FOR CHRISTMAS! WHAT DO I DO? PLEASE HELP ME!
*TR

20

Date Complaint Filed: 02/18/2016
Date of Incident: 02/17/2016
NHTSA ID Number: 10836821
Consumer Location: JACKSONVILLE, NC
Model: JEEP WRANGLER 2012

SUMMARY:
TIPM FAILURE. THE TIPM NEEDED TO BE REPLACED BECAUSE IT
WASN'T OPERATING THE ENGINE COOLING FAN (RADIATOR FAN). THE
COOLING FAN MODULE ALSO HAD TO BE REPLACED. I UNDERSTAND
A FAILED TIPM COULD CAUSE AIRBAGS TO DEPLOY INADVERTENTLY,
WINDOW OPENING FAILURE, RANDOM HORN ALARMS, STABILITY
CONTROL PROBLEMS, AND MORE. AN ENGINE TROUBLE LIGHT CAME
ON WHILE DRIVING. THE DEALERSHIP EXPLAINED THE POWER
DISTRIBUTION MODULE (PART NUMBER 68244883AA) AND THE
COOLING FAN MODULE (PART NUMBER 68143894AB) HAD TO BE
REPLACED BECAUSE THEY HAD FAILED.

Date Complaint Filed: 05/05/2016
Date of Incident: 05/05/2016
NHTSA ID Number: 10863497
Consumer Location: DADE CITY, FL
Model: JEEP WRANGLER 2016

SUMMARY:
MY SON CAME HOME FROM SCHOOL TO GET HIS WALLET TO GO FILL
UP HIS JEEP WHEN HE CAME OUT BACK OUTSIDE THE FRONT OF HIS
JEEP WAS SMOKING, WHEN HE OPENED THE HOOD HE FOUND THE
RADIATOR FAN ON FIRE. HE QUICKLY RAN AND GOT THE HOSE AND
PUT OUT THE FIRE BUT IT CONTINUED TO SMOKE FOR ABOUT 5 MINS.
THE JEEP WAS RUNNING PARKED IN THE DRIVEWAY THE JEEP ONLY
HAS ABOUT 4000 MILES ON IT THE AIR-CONDITIONING WAS ON. HE
ONLY DROVE IT FROM SCHOOL ABOUT 1 MILE AWAY. WE HAVE NOT
TAKEN IT TO THE DEALER YET. THE FANS CURRENTLY ARE NOT
WORKING THE REST OF THE VEHICLE SEEMS TO BE FINE. I HAVE
PICTURE AND A VIDEO I CAN TRY TO UP LOAD.
Date Complaint Filed: 09/29/2016
Date of Incident: 09/22/2016
NHTSA ID Number: 10910621
Consumer Location: TROUTDALE, OR

Model: JEEP GRAND CHEROKEE 2011

SUMMARY:

WHEN THE JEEP WAS STARTED IT WOULD NOT SHIFT INTO GEAR. ALSO THE CAR COULD NOT BE TURNED OFF. ALL OF THE THE WARNING LIGHTS ON THE DASH WERE ALSO ON. SO THE CAR WAS LEFT WITH THE ENGINE RUNNING BUT NOTHING ELSE WORKING. THE COOLING FAN FOR THE ENGINE WOULD NOT WORK SO THE CAR STARTED TO OVER HEAT. I CALLED THE DEALER AND ASKED FOR SUGGESTIONS ON HOW TO TURN OFF THE CAR. THE RESPONSE WAS TO TAKE OFF THE BATTERY CABLE. THE BATTERY IS UNDER THE SEAT AND CAN NOT BE REMOVED WITH OUT TOOLS. AT THIS POINT THE CAR OVER HEATED AND WAS PUSHING OUT COOLANT ONTO THE GROUND. I FINALLY HAD TO OPEN THE FUSE / RELAY BOX IN THE ENGINE COMPARTMENT AND START PULLING RELAYS UNTIL THE ENGINE TURNED OFF. I HAD NO OTHER WAY OF GETTING THE ENGINE TO STOP RUNNING AND THE FEAR WAS SOMETHING WOULD GET HOT ENOUGH TO CATCH ON FIRE. ALL OF THIS RESULTED IN OVER $1600.00 DOLLARS IN DAMAGE.

Date Complaint Filed: 06/29/2017
Date of Incident: 06/02/2017
Component(s): ELECTRICAL SYSTEM , ENGINE
NHTSA ID Number: 11002400
Consumer Location: JASPER, TX
Model: JEEP GRAND CHEROKEE 2012

SUMMARY:

TL* THE CONTACT OWNS A 2012 JEEP GRAND CHEROKEE. WHILE THE VEHICLE WAS STATIONARY WITH THE ENGINE RUNNING, THE VEHICLE WOULD NOT TURN OFF WHEN PROMPTED. THE CONTACT STATED THAT THE VEHICLE BEGAN TO SMOKE DUE TO FAN THAT CONTINUED TO RUN. ON ONE OCCASION, THE VEHICLE STALLED WITHOUT WARNING AND LOST POWER COMPLETELY. MIKE SMITH JEEP OF BEAUMONT, TEXAS ATTEMPTED TO REPAIR THE VEHICLE NUMEROUS TIMES, BUT THE FAILURE CONTINUED. THE WATER PUMP WAS REPLACED AFTER THE COOLANT OIL BEGAN LEAKING INTO THE PUMP. IN ADDITION, THE TRACTION CONTROL INDICATOR ILLUMINATED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURES AND INSTRUCTED THE DEALER TO CHECK THE TIPM; HOWEVER, THE FAILURES RECURRED EVEN AFTER NUMEROUS

22

REPAIRS. THE FAILURE MILEAGE WAS 114,000/

Date Complaint Filed: 02/10/2014
Date of Incident: 02/06/2014
Component(s): ENGINE
NHTSA ID Number: 10563654
Consumer Location: TOPSHAM, ME
Model: JEEP GRAND CHEROKEE 2002

SUMMARY:
WHILE DRIVING ON THE HIGHWAY AT A SLOW RATE OF SPEED (5 MPH)
DUE TO A TRAFFIC JAM, MY VEHICLE OVERHEATED. ONCE TOWED OFF
THE HIGHWAY, THE MECHANIC DIAGNOSED A FAN FAILURE FOR THE
RADIATOR WHICH CAUSED THE VEHICLE TO OVERHEAT.
SUBSEQUENTLY THERE MAY BE DAMAGE TO THE ENGINE CAUSED BY
THE FAN FAILURE. I RESEARCHED THIS AND DISCOVERED A RECALL
ISSUED (8/2006) BY DAIMLER CHRYSLER FOR THE ELECTRIC
RADIATOR FAN (SAFETY RECALL F25). I CALLED CHRYSLER TODAY
(CASE #[XXX]) AND THEY SAID THAT THIS RECALL DOES NOT APPLY
TO MY VEHICLE EVEN THOUGH THE RECALL CLEARLY STATES IT
APPLIES TO VEHICLES WITH THE "S" IN THE 8TH POSITION WHICH IT IS.
PLEASE ADVISE ON NEXT STEPS. THANK YOU. INFORMATION
REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT
(FOIA), 5 U.S.C. 552(B)(6). *TR

Date Complaint Filed: 08/02/2014
Date of Incident: 08/15/2010
Component(s): ELECTRICAL SYSTEM
NHTSA ID Number: 10618398
Consumer Location: HOWARDSVILLE, VA
Model: JEEP WRANGLER 2005

SUMMARY:
HAVE HAD ONGOING ELECTRICAL ISSUES BEGINNING IN AUGUST,
2010. CHECK ENGINE LIGHTS THAT HAVE BEEN PROVEN INACCURATE.
HAVE REPLACED FAN MOTOR RESISTOR X 2, ELECTRICAL CONTROL
UNIT X1, FAN BLOWER X1. WIRING IS MELTED (BURNT) AT LOCATIONS
INDICATING FUSE SYSTEM/ WIRING HARNESS IS NOT FUNCTIONING
PROPERLY.

47.     In many instances, consumers have incurred and will continue to incur expenses for replacement of the defective Original Fan, despite Defendant's plain knowledge of a latent defect contained in the Class Vehicles manufactured by Defendant.

48.     Upon information and belief, Defendant, through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing and internal investigations, and (6) other various sources, was well aware of the Defect but failed to notify customers of the nature and extent of the problems with Class Vehicles or provide any adequate remedy.

49.     Defendant failed to adequately research, design, test and/or manufacture the cooling fan systems in the Class Vehicles before warranting, advertising, promoting, marketing, and/or selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

50.     Defendant is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Defendant conducts tests, including pre-sale durability testing, on incoming components, including the cooling systems for its vehicles, to verify the parts are free from defect and align with Defendant's specifications and intended use of the Class Vehicles.

51.     Upon information and belief, Defendant performs a four-part durability evaluation on its vehicles before they are released for sale to the general public. The four steps are a virtual analysis, data acquisition, bench testing, and road testing.

52.     The virtual analysis stage is conducted by FCA engineers. It is designed to identify risk areas early in the development process by using software simulations to identify potential part failures by using advanced mathematical models. This process allows FCA to identify and correct any issues with its vehicles before they are produced and when it is the least costly to remedy.

53.     The data acquisition stage is also conducted by FCA engineers. FCA engineers collect and analyze road load data (data regarding the expected load the vehicles will undergo during their anticipated lifetime).

54.     Bench testing involves testing individual components of the vehicle to simulate real world conditions. Bench testing is designed to verify the overall soundness of a design under controlled conditions. The testing performed typically includes testing various component parts to failure.

55.     Finally, Defendant's presale durability road testing system is nicknamed DUMBO, which stands for Durability Monitoring Box and Off-board.

56.     The purpose of DUMBO is to detect preliminary degradation of vehicle component parts. Road testing of the vehicles is conducted and data is logged through an on-board unit within the vehicle, which is then transferred to a server for

analysis. The DUMBO system is used to verify the correct execution of durability tests, to monitor any performance losses, and to collect data. The collected data is then run through various event recognition, event validation, and performance evaluation algorithms to identify any loss of performance.

57.    Through these quality control metrics, FCA knew or should have known of the Defect in the Original Fans of the Class Vehicles prior to and shortly after the time of sale to Class members.

## C. FCA's Warranties Related to the Defect

58.    The Class Vehicles come with a three-year/36,000 mile Basic Limited Warranty. The Basic Limited Warranty lasts for three years from the date delivery of the Class Vehicle is taken, or for 36,000 miles on the odometer, whichever occurs first. The Class Vehicles also come with a five-year/100,000 mile Powertrain Warranty. Defendant has stated that the Defect is not covered by the Powertrain Warranty, but is covered by the Basic Limited Warranty. However, FCA well-knew that the Defect would prevent the Original Fans from lasting for the anticipated usable life of a cooling fan, risking severe damage to the engine, yet failed to take action to remedy the Defect.

59.    FCA instructs vehicle owners and lessees to bring their vehicles to a FCA dealership for the warranty repairs. Many owners and lessees have presented Class Vehicles to FCA dealerships with complaints related to the Defect.

26

60.     Despite the Defect having been contained in the Class Vehicles when manufactured by Defendant, in many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the Defect, as well as the replacement of the Original Fans, and related expenses.

61.     Furthermore, a number of Class Members, who presented their Class Vehicles to FCA dealerships because of issues related to the Defect, were denied warranty repairs and, instead, informed that despite the known Defect they would be forced to pay for the parts and labor necessary to install the Replacement Fans, in many instances having to wait long periods due to the backordered status of the replacement parts. As a result, after expiration of the warranty period, Class Members were and are forced to pay for Replacement Fans to correct the Defect.

### D. Complaints by Other Class Members

62.     The Internet is replete with complaints made by consumers who purchased or leased Class Vehicles. These complaints can be found in numerous forums that are monitored by FCA, as well as on NHTSA's website.

63.     Federal law requires FCA to monitor defects which can cause a safety issue and report them within five (5) days. FCA regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the Defect, inter alia, through these complaints.

27

64.    Below are examples of consumer complaints made to NHTSA regarding the Original Fan in the Jeep Renegade:

NHTSA ID Number: 11100703
Complaint Filed: June 9, 2018
Consumer Location: Pearl City, HI
RADIATOR FAN IS LOOSE AND IS MAKING LOUD NOISES. DONE RESEARCH AND HAVE SEEN THIS IS A VERY COMMON PROBLEM WITH 2016 JEEP RENEGADE. IT HAS NOW CAUSED THE CHECK ENGINE LIGHT TO COME ON.

NHTSA ID Number: 11098805
Complaint Filed: May 30, 2018
Consumer Location: Rogersville, TN
WE WERE ON OUR WAY TO CHARLESTON, SC WHEN WE HEARD A RATTLING NOISE UNDER THE HOOD. AFTER FURTHER INSPECTION WHEN WE STOPPED WE NOTICED THE COOLING FAN WAS WOBBLING. WHEN WE GOT BACK TO OUR HOMETOWN A FEW DAYS LATER I TOOK THE CAR TO DEALERSHIP. THEY STATED IT WAS THE COOLING FAN ASSEMBLY AND NEEDED TO BE REPLACED. THIS WAS NOT COVERED BY ANY WARRANTY AND WAS GOING TO COST CLOSE TO $500. THE DEALER STATED THAT THIS HAD BEEN A RECENT PROBLEM THEY WERE NOTICING ON A FEW OTHER RENEGADES THEY REPAIRED IN THE PAST COUPLE OF WEEKS. I HAVE RESEARCHED FORUMS AND SO MANY PEOPLE HAVE BEEN HAVING THIS VERY SAME ISSUE WITH THEIR RENEGADES AND NO RECALL HAS BEEN ISSUED.

NHTSA ID Number: 11096652
Complaint Filed: May 18, 2018
Consumer Location: Bryson City, NC
THE RADIATOR COOLING FAN MALFUNCTIONED AFTER JUST 50,000 MILES. VEHICLE IS ONLY 2 1/2 YEARS OLD. JEEP WILL NOT COVER THIS UNDER WARRANTY AS THEY SAY IT ISN'T PART OF THE DRIVETRAIN. AFTER READING NUMEROUS COMPLAINTS ABOUT THIS PROBLEM ON YOUR DATABASE I FEEL THIS IS A KNOWN MANUFACTURER'S DEFECT THAT SHOULD BE RECALLED. FAILURE CAN HAPPEN AT ANY TIME AND COULD RESULT IN A BLOWN MOTOR AND/OR OTHER DAMAGES

28

RESULTING IN A VEHICLE CRASH CAUSING SERIOUS INJURY OR DEATH. IT'S TIME THAT THE NHTSA ACTS FOR THE CONSUMER AND FORCES JEEP TO A RECALL AND REPLACEMENT OF THE FAN. NORMAL LIFE EXPECTANCY OF ELECTRIC FANS IS WELL OVER 5 YEARS/100,000 MILES. THIS PARTICULAR FAN IS, IN MOST CASES, NOT EVEN LASTING HALF THAT TIME. THE PROBLEM IS SO WIDESPREAD THAT JEEP RAN OUT OF THEM AND HAD/HAS LONG WAIT TIMES. DURING THIS PERIOD THE VEHICLE IS UNUSABLE. THIS IS REALLY UNACCEPTABLE FOR SUCH A NEWER MODEL VEHICLE.

NHTSA ID Number: 11093500
Complaint Filed: May 12, 2018
Consumer Location: Glenwood, MN
RADIATOR FAN SHROUD IS MISSING THE HEAT SHIELD CAUSING THE FAN TO EVENTUALLY WARP MALFUNCTION AND OR BURST INTO FLAMES. ALL EQUIPMENT IS AS IS FROM FACTORY.

NHTSA ID Number: 11093457
Complaint Filed: May 12, 2018
Consumer Location: Louisville, KY
THE RADIATOR FAN IS CAUSING THE VEHICLE TO OVERHEAT. IT IS BREAKING DUE TO NOT HAVING A HEAT SHIELD ON IT AND IT IS CAUSING THE VEHICLE TO OVERHEAT. JEEP FIXES THE PROBLEMS IN THE LATE 2016 MODELS BY PUTTING IN A METAL FAN AND TOOK OUT THE PLASTIC FAN. FEAR OF RENEGADE CATCHING FIRE. VEHICLE OVERHEATS IN THE PARKING LOT.

NHTSA ID Number: 11091039
Complaint Filed: April 30, 2018
Consumer Location: Rock Hill, SC
THE RADIATOR COOLING FAN IS VIBRATING ITSELF OFF. THE VEHICLE HAD LOW MILEAGE STILLUNDER 45,000. LOOKED IT UP AND THERE ARE NUMEROUS PEOPLE WITH THE SAME ISSUE AND APPARENTLY THE PART IS BACK ORDERED FOR MONTHS, WHICH MEANS I AM PAYING FOR A VEHICLE I CANNOT DRIVE. SEEMS LIKE A MANUFACTURER ISSUE TO ME. THERE SHOULD BE A RECALL.

NHTSA ID Number: 11082535
Complaint Filed: April 2, 2018
Consumer Location: Scott, AR
LOUD WOBBLING SOUND WAS NOTICED FROM THE ENGINE BAY OF THE VEHICLE. INVESTIGATION OF THE SOUND REVEALED THE RADIATOR COOLING FAN TO BE VIBRATING VIOLENTLY WHILE ENGAGED. SHORTLY AFTER THIS DISCOVERY THE FAN FAILED TO ENGAGE. VEHICLE WAS TAKEN TO STEVE LANDERS JEEP LOCATED AT 401 COLONEL GLENN PLAZA LOOP LITTLE ROCK, AR 72210. THE DIAGNOSIS WAS CONFIRMED TO BE THE RADIATOR COOLING FAN HAD FAILED. THE VEHICLE WAS OUT OF ORIGINAL MANUFACTURE WARRANTY AT 54,600 MILES. FAN WAS REPLACED AT THE DEALERSHIP AT MY EXPENSE.

NHTSA ID Number: 11079449
Complaint Filed: March 14, 2018
Consumer Location: Tunnel Hill, GA
AT 38,000 MILES MY COOLING FAN CAME LOOSE WHILE DRIVING. TOOK TO DEALERSHIP AND WAS TOLD WARRANTY WOULD NOT COVER. MY SEATBELT SENSOR AND OTHER SENSOR LIGHTS ARE LIGHTING UP RANDOMLY SO I'M NOT SURE IF THERE IS AN EMERGENCY OR IF THE SENSORS ARE JUST FAULTY. BOTH OF THESE ISSUES COULD RESULT IN AN ACCIDENT. ALL OF THIS WHILE DRIVING ALTHOUGH THE SENSORS ARE WHILE STATIONARY TOO.

NHTSA ID Number: 11078243
Complaint Filed: March 8, 2018
Consumer Location: Portage, MI
JUST LIKE SOOO MANY PEOPLE ONLINE OUT RADIATOR COOLING FAN STARTED WOBBLING AND NOW GRINDING. THERE ARE SO MANY FORUMS, SITES AND VIDEOS THAT SHOW THIS IS HAPPENING TO A LOT OF PEOPLE. A RECALL IS NOT YET IN EFFECT BUT IT NEEDS TO BE ASAP. COST IS 400-1000 FOR EACH REPAIR. AND DON'T LET THEM TRY TO SAY IT'S AN ISSUE OF DIRT. IT'S USUALLY AROUND 36,000 MILES SO DON'T WAIT TO FIX IT AS THE WARRENTY WILL EXPIRE.

NHTSA ID Number: 11076195
Complaint Filed: March 5, 2018

30

Consumer Location: Colorado Springs, CO
AT ABOUT 41000 MILES WHEN THE COOLING FAN STARTED TO
WOBBLE AND STARTED TO SMELL. TOOK IT IN TO GET IT
REPAIRED. IT WAS THE COOLING FAN. AFTER DOING SOME
RESEARCH, OVER 1000S HAVE HAD THIS ISSUE DUE TO FAULTING
BEARINGS IN THE FAN. I URGE TO DEMAND A RECALL ON THIS.

NHTSA ID Number: 11076014
Complaint Filed: March 2, 2018
Consumer Location: Oroville, CA
THE FAN THAT COOLS THE ENGINE WAS LOOSE, RATTLING AND
COMPLETELY FAILED CAUSING IT TO MAKE MY RADIATOR
FLUID OVERHEAT TO 252 DEGREES! COULDN'T DRIVE FOR FEAR
OF MY ENGINE OVERHEATING AND HAD TO GET IT TOWED!! IT
WAS ONLY AT 37,00 MILES! [. . .] THE ENGINE STARTED
OVERHEATING WHEN I WAS IN IDLE, BUT I AM NOT SURE WHEN
THE FAN ACTUALLY BROKE. IT HAD MADE A RATTLING SOUND
DURING IDLE THE DAY BEFORE IT BROKE.

NHTSA ID Number: 11074176
Complaint Filed: February 21, 2018
Consumer Location: Shallotte, NC
ENGINE COOLING RAN MAKING SCREECHING NOISE AND
WOBBLING ON SHAFT. SOUNDS LIKE THE FAN IS CONTACTING
SOMETHING.

NHTSA ID Number: 11073122
Complaint Filed: February 15, 2018
Consumer Location: Andrews, SC
STARTED RUNNING HOT OUT OF THE BLUE. CHECKED FUSES
AND THE MAIN FUSE TO THE FAN WAS BLOWN. REPLACED THE
FUSE BUT THE FAN STILL IS NOT TURNING ON. VEHICLE IS STILL
RUNNING HOT AND PRODUCING SMOKE/STEAM ALONG WITH A
BURNING SMELL. THE SYMPTOMS STARTED WHILE WAITING IN
STOPPED TRAFFIC BUT SEEMED TO CLEAR UP WHILE MOVING,
THEN GOT WORSE WHILE SITTING IDLE WITH AC UNIT ON. I
HAVE BEEN READING UP ON IF THERE ARE ISSUES RELATED TO
MINE AND THERE SEEM TO BE A LOT OF ISSUES WITH THE
COOLING FAN. WHY IS THIS NOT A RECALL??

NHTSA ID Number: 11066966
Complaint Filed: February 5, 2018
Consumer Location: Rome, GA
COOLING FAN SHAKES RATTLES AND IS NOT WORKING
PROPERLY 51,000 MILES AND HAD TO BE REPLACED COST ME

NHTSA ID Number: 11065491
Complaint Filed: January 28, 2018
Consumer Location: Fraziers Bottom, WV
COOLING FAN SHAKES RATTLES ISN'T WORKING PROPERLY CAR
GIVES OFF AN ANTIFREEZE SMELL OR ELECTRICAL SMELL WHEN
FAN MALFUNCTIONS.

NHTSA ID Number: 11063705
Complaint Filed: January 19, 2018
Consumer Location: Staten Island, NY
RADIATOR FAN IS FAILING AT 20,000 MILES NOT NOT KEEPING
THE RADIATOR AND ENGINE COOL. THIS OCCURS WHILE
DRIVING AND IDLING. JEEP HAS THIS PART ON BACK ORDER
WITH NO ETA. I WAS TOLD THAT IT COULD BE WEEKS BEFORE
THE PART ARRIVES. I HAVE BEEN MADE AWARE THAT MANY
OTHER JEEP RENEGADE OWNERS ARE EXPERIENCING THIS
PROBLEM, AS WELL AS THE LONG DELAY FOR THE PART TO
ARRIVE. HOWEVER, THERE IS NO RECALL THAT HAS BEEN
ISSUED. I HAVE A RENTAL CAR THAT I AM PAYING OUT OF
POCKET FOR WITH NO ASSISTANCE FROM JEEP.

NHTSA ID Number: 11063636
Complaint Filed: January 18, 2018
Consumer Location: Turnersville, NJ
RADIATOR FAN ASSEMBLY RATTLE AND VIBRATION ISSUE. THE
DEALER HAS HAD THE CAR FOR TWO MONTHS FOR THIS ISSUE
WAITING FOR A FIX FROM JEEP AND HAVE YET TO FIND A
SOLUTION TO THE ISSUE AND IT SEEMS THAT MANY PEOPLE ARE
EXPERIENCING THE VERY SAME ISSUE. THE CAR ALSO AT TIMES
WILL NOT START WHEN THE START BUTTON IS PUSHED AND THE
DEALER CLAIMS THAT IT IS NOT AN ISSUE BUT OTHERS ARE
COMPLAINING OF IT AS WELL. THE CAR WAS PURCHASED IN
MARCH OF 2016 AND THE DEALERS HAS HAD THE CAR FOR 3+
PLUS MONTHS DURING THAT TIME.

NHTSA ID Number: 11061435
Complaint Filed: January 9, 2018
Consumer Location: Cross Lanes, WV
RADIATOR FAN MAKES RATTLING SOUND WHILE STATIONARY
AND WHILE DRIVING. VERY LOUD AND CAUSES CAR TO
OVERHEAT WHEN RAN FOR ANY EXTENDED PERIOD OF TIME.

NHTSA ID Number: 11058599
Complaint Filed: January 4, 2018
Consumer Location: Eagle Pass, TX
TL* THE CONTACT OWNS A 2016 JEEP RENEGADE. WHILE
DRIVING 10 MPH, THE VEHICLE OVERHEATING INDICATOR
ILLUMINATED. THE VEHICLE WAS TAKEN TO A LOCAL DEALER
(ANCIRA EAGLE PASS FORD CHRYSLER DODGE JEEP RAM, 403I9
ADAMS CIR, EAGLE PASS, TX 78852) WHERE IT WAS DIAGNOSED
THAT THE FAN FRACTURED. THE PARTS WERE ON BACKORDER
UNTIL MARCH 19, 2018. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE ISSUE AND OPENED
CASE NUMBER: 33146932. THE MANUFACTURER OFFERED TO
PROVIDE A LOANER VEHICLE FOR TEN DAYS. THE FAILURE
MILEAGE WAS 21,000.

NHTSA ID Number: 11058071
Complaint Filed: January 2, 2018
Consumer Location: Deltona, FL
COOLING FAN BREAKS AND CAR OVERHEATS AND SMOKES. THIS
IS A KNOWN ISSUE FOR JEEP RENEGADE

NHTSA ID Number: 11056248
Complaint Filed: December 23, 2017
Consumer Location: Williamsburg, VA
3 WEEKS AGO I HEARD A WOBBLING SOUND UNDER THE HOOD
WHILE THE CAR WAS IDLING. IT WAS A DAY LATER I WAS ABLE
CATCH WHAT IT WAS MAKING THE NOISE WHICH IS THE
COOLING FAN. I HAD IT TOWED TO THE DEALERSHIP NOT
WANTING TO DRIVE IT FOR FEAR OF OVERHEATING. THE ISSUE
WAS CONFIRMED THERE AND AFTER TWO FALSE ARRIVAL
DATES I SPOKE TO THE DEALERSHIP AND THY FINALLY

33

ADMITTED THERE WAS NO DATE FOR THE ARRIVAL OF THE NEW FAN. I AM NOW PAYING FOR A CAR I HAVE NO IDEA WHEN I WILL GET BACK. MY JOB REQUIRES ME TO TRAVEL LONG DISTANCES AND THE OLDER CAR I AM USING NOW IS NOT VERY RELIABLE FOR THIS TYPE OF TRAVEL.

NHTSA ID Number: 11055394
Complaint Filed: December 18, 2017
Consumer Location: New Britain, CT
WHILE DRIVING IN CITY, ENGINE TEMP WENT TO OVERHEAT. LOUD NOISE AND SMOKE FROM ENGINE. AFTER INSPECTION ENGINE FAN WOBBLING ON MOUNT AND MOTOR SMOKING. CAR IS 14 MONTHS OLD WITH 15000 MILES

NHTSA ID Number: 11052368
Complaint Filed: December 4, 2017
Consumer Location: Hallsville, TX
THIS CAR IS EVENTUALLY GOING TO KILL SOMEONE. THE ACCELERATOR CHOOSES WHEN TO WORK. MY CAR HAS 35000 MILES ON IT AND WHEN I AM TURNING OR ON THE HIGHWAY OR JUST DRIVING NORMALLY, PRESSING DOWN ON THE ACCELERATOR IT HAS A TWO TO THREE SECOND DELAY BEFORE IT WILL ENGAGE. THE DEALERSHIPS WON'T HELP ME AND IT HAS ALMOST CAUSED ME TO GET INTO NUMEROUS ACCIDENTS WITH MY THREE YEAR OLD SON IN THE CAR! MANY PEOPLE ARE HAVING THE SAME ISSUE. ALSO AS OF TODAY I AM HAVING TO REPLACE THE RADIATOR FAN FOR THE THIRD TIME. IT HAS BURNED UP TWICE BEFORE! HOW UNFAIR TO BUY A NEW CAR AND HAVE TO HAVE THESE OUTRAGEOUS EXPENSES AND SAFETY ISSUES!!! THIS HAS TO BE FIXED.

NHTSA ID Number: 11052183
Complaint Filed: December 4, 2017
Consumer Location: Zwolle, LA
WHEN I WOULD GET OUT OF MY VEHICLE WITH IT ON I COULD HEAR A RADDLING NOISE COMING FROM THE FRONT OF MY JEEP. WHEN I CHECKED IT OUT MY RADIATOR FAN WOULD WOBBLING WHEN IT SPINS. MY JEEP ONLY HAS 31,000 MILES IN IT.

65.    Complaints by Ram ProMaster City owners—for the exact same Original Fan (Part No. 68247205AA)—tell the same story as those of Jeep Renegade Owners:

NHTSA ID Number: 11081022
Complaint Filed: March 23, 2018
Consumer Location: Wilmington, NC
COOLING FAN FAILURE, COOLING FAN DOES NOT OPERATE AFTER VEHICLES WATER TEMP GETS HIGH, VEHICLE WILL OVERHEAT IF STATIONARY IE SITTING IN TRAFFIC 38,000 MILES WHEN PROBLEM STARTED REPLACE COOLING FAN RELAY ONCE ALREADY PROBLEM NOT CORRECTED

NHTSA ID Number: 11053974
Complaint Filed: December 11, 2017
Consumer Location: Pembroke Pines, FL
RADIATOR FAN 68360299AA FAIL AND THE WARRANTY DOESN'T COVER MY VEHICLE HAS ONLY 42 K MILES AND I SEE A LOT OF COMPLAINS ON THE INTERNET MY VEHICULAR LE WAS RUNNING WHEN THIS HAPPEN

NHTSA ID Number: 10994373
Complaint Filed: June 12, 2017
Consumer Location: Northborough, MA
I HAD PROBLEM WITH THE RADIATOR FAN , JUST GET LOCKED UP AND CAR BEGIN TO WARMING UP , I CALL ALL DEALERS TO BUY NEW PART , AND ALL THEY GAVE ME SAME ANSWER , THEY HAVE HUGE AMOUNT OF BACK ORDERS , WILL TAKE 10 DAYS TO ARRIVE , FOR ME PERSONALLY SOUNDS WEIRD HOW MANY CARS HAVE THE SAME TYPE OF PROBLEM ATE SAME TIME . I THINK NEEDS INVESTIGATION FROM YOU GUYS , THANKS

NHTSA ID Number: 11100220
Complaint Filed: June 6, 2018
Consumer Location: Jamaica, NY

IMMEDIATELY AFTER AN INSPECTION, OIL CHANGE AND COOLANT CHECK, AND I BEGAN USING THE AIR CONDITIONER, THE FAN BEGAN TO RATTLE AGAINST THE HOOD OF THE CAR. I STOPPED USING THE AIR CONDITIONER AND IT SOUNDED AS IF THE FAN WAS STRUGGLING TO STAY ON. NEXT THE CHECK ENGINE LIGHT APPEARED AND THE TEMPERATURE ON THE THERMOSTAT WENT TO THE MAX AND OVERHEATED. I ATTEMPTED TO TURN MY CAR ON AND OFF TO RESTART THE FAN AND COOL THE ENGINE. I USE MY VAN DAILY FOR WORK, AND MAINTAIN IT EVERY TWO MONTHS. I FEEL THE THE POWER TRAIN ON THE 2016 RAM PROMASTER 1500 SHOULD BE RECALLED

NHTSA ID Number: 11097293
Complaint Filed: May 22, 2018
Consumer Location: Indianapolis, IN
SERVICE ENGINE LIGHT COMES ON INDICATING FAULT ON ONE FAN 3 CONTROL CIRCUIT, (ERROR CODE P0482) BLOWN FUSE REPLACED BUT STILL SAME PROBLEM , DEALER RECOMMENDS PART TO BE REPLACED IS COOLING FAN MODULE - PART # 68189000AD WHICH IS ON BACK ORDER FROM THE DEALERSHIP FOR OVER 1300 PARTS. ...SOMETHING IS CLEARLY WRONG WITH THIS PART AND NO REPORTS ON THEM WERE REPORTED TO THE CUSTOMERS

NHTSA ID Number: 11096554
Complaint Filed: May 17, 2018
Consumer Location: Boulder, CO
I WAS PARKED IN A LOT WITH THE ENGINE RUNNING AND THE CHECK ENGINE LIGHT CAME ON (SOLID, NOT FLASHING SO I ASSUMED IT WAS OK TO DRIVE). AFTER I STARTED MOVING A BIT, THE TEMPERATURE GAUGE RED-LINED. I PARKED AND LET IT COOL OFF. WHEN I STARTED DRIVING AGAIN, THE CEL WAS ON BUT THE TEMP WAS NORMAL AND STAYED NORMAL UNTIL I REVERSED INTO MY DRIVEWAY...AT WHICH POINT THE GAUGE REDLINED AGAIN AND THE PRESSURE RELEASE ON THE COOLANT TANK TRIPPED AND COOLANT STARTED SHOOTING EVERYWHERE. I TOOK IT INTO THE DEALER AND THEY CONFIRMED THAT IT WAS A FAN CONTROL MODULE THAT NEEDS REPLACEMENT. OF COURSE, THE MODULE IS ON

36

INDEFINITE BACKORDER FROM THEIR WAREHOUSE. THEY SAID THEY CAN GET ONE FROM O'REILLY BUT I WOULD HAVE TO PAY THE DIFFERENCE MYSELF WHICH WAS ABOUT $200. AFTER READING REPORTS ONLINE, IT APPEARS THAT THIS IS A COMMON FAILURE ON RAM PROMASTERS WITH NO RESOLUTION OR RECALL. REPORTS INDICATE THAT THERE ARE THOUSANDS OF VEHICLES WAITING ON THIS PART.

NHTSA ID Number: 11051440
Complaint Filed: November 30, 2017
Consumer Location: Granbury, TX
VEHICLE OVERHEATING DUE TO COOLING FAN FAILURE AND FAULTY FRONT STRUTS AND THE CV JOINTS

## **TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL**

66.     Any applicable statute of limitations has been tolled by FCA's knowing and active concealment of the Defect and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the Defect and could not reasonably discover the defect or FCA's deception with respect to the Defect.

67.     Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that FCA was concealing a defect and/or that the Class Vehicles contained the Defect and corresponding safety hazard of overheating and engine fire. As alleged herein, the existence of the Defect and corresponding safety hazard were material to Plaintiffs and members of the Classes at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not

have discovered through the exercise of reasonable diligence that FCA was concealing the Defect in the Class Vehicles.

68.     All applicable statutes of limitation have been tolled by FCA's knowing, active, and ongoing affirmative concealment of the facts alleged herein including the Defect and safety hazard. Plaintiffs and members of the Classes reasonably relied on FCA's knowing, active and ongoing affirmative concealment.

69.     At all times, FCA was and is under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality, character, nature and grade of the Class Vehicles and to disclose the Defect and associated safety hazard. Instead, FCA actively concealed the true standard, quality, character, nature and grade of the Class Vehicles and knowingly made misrepresentations and omissions about the quality, reliability, safety, characteristics and performance of the Class Vehicles. Plaintiffs and members of the Class reasonably relied on FCA's knowing and affirmative misrepresentations and concealment of the facts alleged herein.

70.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and FCA's fraudulent concealment; further, Defendant is estopped from relying on any statutes of limitations in defense of this action.

## **CLASS ALLEGATIONS**

71.    Plaintiffs bring this action pursuant to the provisions of Rules 23(a),

23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of

themselves and the following proposed classes:

**Nationwide Class:**
All persons or entities in the United States
who purchased or leased a 2015-2017 Jeep Renegade vehicles
or 2015-2017 Ram ProMaster City vehicles.

**New Mexico Subclass:**
All members of the Nationwide Class who are
residents of New Mexico who purchased or leased a
Class Vehicle in New Mexico.

**California Subclass:**
All members of the Nationwide Class who are
residents of California who purchased or leased a
Class Vehicle in California.

72.    Excluded from the Class are FCA, its employees, co-conspirators,

officers, directors, legal representatives, heirs, successors, wholly- or partly-owned,

and its subsidiaries and affiliates; FCA dealers; proposed Class counsel and their

employees; the judicial officers and associated court staff assigned to this case and

their immediate family members; all persons who make a timely election to be

excluded from the Class; governmental entities; and the judge to whom this case is

assigned and his/her immediate family.

73.    Certification of Plaintiffs' claims for class-wide treatment is

appropriate because Plaintiffs can prove the elements of their claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

74.    This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

75.    <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. More than 313,000 Class Vehicles have been sold in the United States. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

76.    <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a.  Whether FCA engaged in the conduct alleged herein;

   b.  Whether FCA designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

   c.  Whether the Original Fans in the Class Vehicles constitute a safety defect;

   d.  Whether FCA knew about the Defect in the Original Fans and, if so, how long FCA has known of it;

40

e. Whether FCA designed, manufactured, marketed, and distributed the Class Vehicles with the Defect in the Original Fans;

f. Whether FCA's conduct violates consumer protection statutes, false advertising laws, sales contracts, warranty laws, and other laws as asserted herein;

g. Whether Plaintiffs and the other Class members overpaid for their Class Vehicles;

h. Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

i. Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

77. <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through FCA's wrongful conduct as described above.

78. <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

79. <u>Declaratory and Injunctive Relief</u>. Federal Rule of Civil Procedure 23(b)(2): FCA has acted or refused to act on grounds generally applicable to

Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

80. <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against FCA, so it would be impracticable for the members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIOLATIONS ALLEGED

## COUNT I
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *ET SEQ.*)
### (On behalf of the Nationwide Class)

81.     Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

82.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

83.     FCA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

84.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

85.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

86.     FCA's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicle's implied warranties are covered under 15 U.S.C. § 2301(7).

87.     FCA breached these warranties, as described in more detail above. Without limitation, the Class Vehicles possess a latent defect that puts vehicle occupants' safety in jeopardy.  The Original Fan in the Class Vehicles was defectively designed, manufactured and unsafe, rendering the Class Vehicles unsafe, contrary to FCA's representations about its vehicles. The Class Vehicles share a

common design and manufacturing defect which can, among other things, allow the engine to overheat and catch fire.

88. Plaintiffs and the other Nationwide Class members have had sufficient direct dealings with either FCA or its agents (*e.g.*, dealerships and technical support) to establish privity of contract between FCA on one hand, and Plaintiffs and each of the other Nationwide Class members on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other Nationwide Class members are intended third-party beneficiaries of contracts between FCA and its dealers, and specifically, of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

89. Plaintiff Flores, by contacting FCA's national customer service line and requesting that the Original Fan be fixed under the warranty and having received a denial of that request by FCA, FCA was afforded a reasonable opportunity to cure its breach of written warranties. Each Plaintiff contacted FCA either directly or through one of its dealerships and each of their requests for the repairs to be completed without cost, under the warranty, were denied.

90. At the time of sale or lease of each Class Vehicle, FCA knew, should have known, or was reckless in not knowing of its misrepresentations and omissions

concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect in the Original Fans. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure has been satisfied.

91.     Plaintiffs and the other Nationwide Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because FCA is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Nationwide Class members have not re-accepted their Class Vehicles by retaining them.

92.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

93.     Plaintiff, individually and on behalf of the other Nationwide Class members, seeks all damages permitted by law, including diminution in value of the Class Vehicles, in an amount to be proven at trial.

**COUNT II**
**VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT**
**(N.M. STAT. ANN. § 57-12-1, *ET SEQ.*)**
**(On behalf of the New Mexico Subclass)**

45

94.    Plaintiff Flores ("Plaintiff," for purposes of all New Mexico Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

95.    Plaintiff brings this Count on behalf of himself and the New Mexico Subclass.

96.    FCA, Plaintiff and the New Mexico Class members are or were "person[s]" under the New Mexico Unfair Trade Practices Act ("NMUTPA"), N.M. Stat. Ann. § 57-12-2.

97.    FCA's conduct, as described herein, occurred in the conduct of trade or commerce as defined under N.M. Stat. Ann. § 57-12-2.

98.    The NMUTPA prohibits "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including, but not limited to, "failing to state a material fact if doing so deceives or tends to deceive."  NM Stat. Ann. § 57-12-2(D). FCA's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. Stat. Ann. § 57-12-2(D). Further, FCA's actions constitute unconscionable actions under N.M. Stat. Ann. § 57-12-2(E), since FCA took

46

advantage of the lack of knowledge, ability, experience, and capacity of the New Mexico Subclass members to a grossly unfair degree.

99.    As alleged herein, FCA concealed the Defect in the Class Vehicles and otherwise engaged in activities with a tendency or capacity to deceive.  Accordingly, FCA engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

100.   FCA had a duty to disclose the existence of the Defect present in the Original Fans installed in the FCA Vehicles. By failing to disclose and by actively concealing the Defect in the Original Fans, by marketing its vehicles as safe, durable, and of high quality, and by presenting itself as a reputable manufacturer that valued quality and stood behind its vehicles after they were sold, FCA engaged in deceptive business practices in violation of the NMUTPA.

101.   FCA's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers, including Plaintiff and the New Mexico Subclass members, about the quality of the Class Vehicles and Jeep and Ram brands, and the true value of the Class Vehicles.

102.   Plaintiff and the New Mexico Subclass members reasonably relied upon FCA's false and misleading representations and unfair or deceptive acts or practices. The New Mexico Subclass had no way of knowing that FCA's representations were false and substantially misleading. As a result, Plaintiff and the New Mexico Subclass members did not, and could not, unravel FCA's deception on their own.

103.   FCA intentionally and knowingly failed to disclose and misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the New Mexico Subclass.

104.   FCA knew or by the exercise of reasonable care should have known that its conduct violated the NMUTPA.

105.   FCA owed Plaintiff and the New Mexico Subclass a duty to disclose the defective condition of the Class Vehicles because FCA:

     a.   possessed exclusive knowledge regarding the nature of the Original Fans and its effort to quietly swap out the Original Fans for the Replacement Fans;

48

b. intentionally concealed the foregoing from Plaintiff and the New Mexico Subclass; and

c. made incomplete representations that it warranted defective components in the Class Vehicles, while purposefully withholding material facts from Plaintiff and the New Mexico Subclass members that contradicted these representations.

106.   FCA's concealment of the Defect in the Class Vehicles was material to Plaintiff and the New Mexico Subclass. A vehicle made by a reputable manufacturer of quality vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of inferior vehicles that conceals defects rather than promptly remedying them.

107.   Plaintiff and the New Mexico Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased these Class Vehicles, would have paid less, and/or would not have continued to drive their unsafe vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff and the New Mexico Subclass members' actions were justified. FCA was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or the New Mexico Subclass members.

108.   FCA's actions as set forth above occurred in the conduct of trade or commerce.

109.   FCA's unfair or deceptive acts or practices were likely to and did, in fact, deceive reasonable consumers.

110.   As a direct and proximate result of FCA's violations of the NMUTPA, Plaintiff and the New Mexico Subclass suffered injury-in-fact and/or actual damage.

111.   Plaintiff and the New Mexico Subclass suffered ascertainable loss caused by FCA's misrepresentations and its failure to disclose material information. Had the New Mexico Subclass been aware of the Defect that existed in Class Vehicles, Plaintiff and the New Mexico Subclass either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff and the New Mexico Subclass did not receive the benefit of their bargain as a result of FCA's misconduct.

112.   FCA's violations present a continuing risk and disservice to Plaintiff and the New Mexico Subclass, as well as to the general public. FCA's unlawful acts and practices complained of herein affect the public interest.

113.   Pursuant to N.M. Stat. Ann. § 57-12-10, Plaintiff and the New Mexico Subclass seek monetary relief against FCA for actual damages or $100, whichever is greater, in addition to treble damages.

114.   Plaintiff and the New Mexico Subclass also seek declaratory relief, punitive damages, an order enjoining FCA's unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs, as well as other proper and just relief under the NMUTPA.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.M. STAT. ANN. §§ 55-2-314, 55-2A-103, 55-2A-212)
### (On behalf of the New Mexico Subclass)

115.   Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

116.   Plaintiff Marcus Flores brings this claim on behalf of himself and the New Mexico Subclass.

117.   FCA is and was at all relevant times a "merchant" with respect to motor vehicle sales under N.M. STAT. ANN. § 55-2-104(1) and a "seller" of motor vehicles under § 55-2-103(1)(d).

118.   With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under N.M. Stat. Ann. § 55-2A-103(1)(p).

119.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.M. Stat. Ann. §§ 55-2-105(1) and 55-2A-103(1)(h).

120.   A warranty that the FCA Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.M. Stat. Ann. §§ 55-2-314 and 55-2A-212.

121. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used unless and until the Replacement Fans were installed. Specifically, the Class Vehicles are inherently defective in that the Original Fans are designed, manufactured, and/or installed in such a way that they will fail well before their usable life. The Original Fans render the Class Vehicles unsafe and reduce their value.

122. FCA was provided notice of these issues by the numerous consumer complaints against it regarding the Defect in the Original Fans and by numerous communications initiated by Plaintiff and others within a reasonable amount of time after the allegations of Defect in the Class Vehicles became public.

123. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and New Mexico Subclass members have been damaged in an amount to be proven at trial.

<u>**COUNT IV**</u>
**BREACH OF EXPRESS WARRANTY**
**(N.M. STAT. ANN. §§ 55-2-314, 55-2A-103, AND 55-2A-210)**
**(On behalf of the New Mexico Subclass)**

124. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

125. Plaintiff Marcus Flores brings this claim on behalf of himself and the New Mexico Subclass.

126.   FCA is and was at all relevant times a "merchant" with respect to motor vehicle sales under N.M. STAT. ANN. § 55-2-104(1) and a "seller" of motor vehicles under § 55-2-103(1)(d).

127.   With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under N.M. Stat. Ann. § 55-2A-103(1)(p).

128.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.M. Stat. Ann. §§ 55-2-105(1) and 55-2A-103(1)(h).

129.   In connection with the purchase of the Class Vehicles, FCA provided Plaintiff and the New Mexico Subclass with a written warranty covering defects in materials and workmanship of the Class Vehicles for three years, as detailed above. In addition, FCA's various oral and written representations regarding the Class Vehicles' durability, reliability, safety, and performance constituted express warranties to the New Mexico Subclass.

130.   FCA's warranties formed a basis of the bargain that was reached when Plaintiff and the New Mexico Subclass members purchased or leased their Class Vehicles.

131.   FCA breached its express warranties (including the implied covenant of good faith and fair dealing) by: (a) knowingly providing Plaintiff and the New Mexico Subclass with Class Vehicles containing defects in material that were never disclosed to Plaintiff and the New Mexico Subclass; (b) failing to repair or replace

the Defect in the Class Vehicles at no cost within the three-year warranty period; (c) ignoring, delaying responses to, and denying warranty claims in bad faith; and (d) supplying products and materials that failed to conform to the representations made by FCA.

132.   Plaintiff and the New Mexico Subclass have given FCA a reasonable opportunity to cure its breaches of express warranty or, alternatively, were not required to do so because such an opportunity would be unnecessary and futile because of FCA's consistent failure to acknowledge the Defect or issue a recall.

133.   Thus, FCA's three-year written warranty fails of its essential purpose and the recovery of Plaintiff and the New Mexico Subclass is not limited to its remedies.

134.   Accordingly, Plaintiff and the New Mexico Subclass assert as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and the New Mexico Subclass members of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

135.   As a direct and proximate result of FCA's breach of its express warranty, Plaintiff and the New Mexico Subclass members have been damaged in an amount to be determined at trial.

136.   FCA was provided notice of the issues raised in this Count and this

54

Complaint as detailed above.

## COUNT V
## VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, ET SEQ.)
### (On behalf of the California Subclass)

137.   Plaintiff Garcia ("Plaintiff," for purposes of all California Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

138.   Plaintiff brings this Count on behalf of the California Subclass.

139.   California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

140.   The Class Vehicles are "goods" as defined in CAL. CIV. CODE §§ 1751(a).

141.   Plaintiff and the other Class members are "consumers" as defined in CAL. CIV. CODE § 1761(d), and Plaintiff, the other Class members, and FCA are "persons" as defined in CAL. CIV. CODE § 1761(c).

142.   As alleged above, FCA made numerous representations concerning the benefits, efficiency, performance, and safety features of the Class Vehicles that were misleading.

143.   In purchasing or leasing the Class Vehicles, Plaintiff and the other Class members were deceived by FCA's failure to disclose that the Class Vehicles suffered from the Defect and the associated safety risks that accompanied the defective Original Fans.

144.   FCA's conduct, as described herein, was and is in violation of the CLRA. FCA's conduct violates at least the following enumerated CLRA provisions:

   a.   CAL. CIV. CODE § 1770(a)(2): Misrepresenting the approval or certification of goods;

   b.   CAL. CIV. CODE § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

   c.   CAL. CIV. CODE § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

   d.   CAL. CIV. CODE § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

   e.   CAL. CIV. CODE § 1770(a)(14): Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.

   f.   CAL. CIV. CODE § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

   g.   CAL. CIV. CODE § 1770(a)(17): Inserting an unconscionable provision in the contract.

145.   Plaintiff and the other Class members have suffered injury in fact and actual damages resulting from FCA's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Class Vehicles.

146.   FCA knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the Original Fans, and that the Class Vehicles were not suitable for their intended use.

147.   The facts concealed and omitted by FCA to Plaintiff and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiff and the other Class members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would not have paid the prices they ultimately paid.

148.   Plaintiff is concurrently serving Defendant with a CLRA notification and demand letter via certified mail, return receipt requested. The notice letter sets forth the relevant facts, notifies Defendant of its CLRA violations, and requests that Defendant promptly remedy those violations.

149.   Plaintiff, individually and on behalf of the class, intends to amend this complaint to add damages claims if Defendants do not remedy their violations as to Plaintiff and the Class Members within the statutory period.

150.   In accordance with Civil Code § 1780 (a), Plaintiff and the other Class members seek injunctive and equitable relief for FCA's violations of the CLRA, including an injunction to enjoin FCA from continuing its unfair and/or deceptive

advertising, acts, and/or business practices in connection with the lease and/or sale of the Class Vehicles.

151.   Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff demands judgment against Defendants under the CLRA for injunctive and equitable relief *only* to enjoin the practices described herein.

152.   Plaintiff, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

153.   Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit A is the affidavit showing that this action has been commenced in the proper forum.

154.   Plaintiff and the other Class members' injuries were proximately caused by FCA's fraudulent and deceptive business practices.

155.   Defendant's practices, acts and courses of conduct in connection with the sale of its products, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing in the future the unlawful, unfair or fraudulent practices as described throughout the Complaint.

156. Plaintiff and the Class reasonably believed and/or depended on the material false and/or misleading information provided by, or omitted by, Defendant with respect to Defendant's unfair and/or deceptive acts and/or practices.

157. Therefore, Plaintiff and the other Class members are entitled to injunctive relief under the CLRA.

## COUNT VI
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, ET SEQ.)
### (On behalf of the California Subclass)

158. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

159. Plaintiff brings this Count on behalf of the California Subclass.

160. California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

161. FCA's conduct, as described herein, was and is in violation of the UCL. FCA's conduct violates the UCL in at least the following ways:

a. By knowingly and intentionally concealing from Plaintiff and the other Class members that the Class Vehicles suffer from the Defect while obtaining money from Plaintiff and the Class;

b. By marketing the Class Vehicles as being functional and defect-free;

c.   By refusing or otherwise failing to adequately repair and/or cure the Defect in the Class Vehicles, and instead requiring Plaintiff and the Class to shoulder the cost of repairs;

d.   By engaging in business practices in a manner which is contrary to public policy, is immoral, unethical, oppressive, and/or unscrupulous and causes injury to consumers which outweighs its benefits;

e.   By violating federal laws, including but not limited to, the Motor Vehicle Safety Act and NHTSA regulations, by failing to effectively recall and repair vehicles that contain a safety defect; Section 5 of the FTC Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce; and Violation of the Magnuson-Moss Warranty Act;

f.   By violating common law, including breach of express warranty; breach of implied warranty of merchantability; unjust enrichment; and/or

g.   By violating other California laws, including Breach of the Implied Warranty of Merchantability; Violations of the Song-Beverly Consumer Warranty Act; California laws governing false advertising and consumer protection, including but not limited to California's False Advertising Law; and California's Consumer Legal Remedies Act.

162.   FCA's misrepresentations and/or omissions alleged herein caused Plaintiff and the other Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and/or omissions, Plaintiff and the other Class members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that instead operated safely and did not contain the Defect.

163.   Accordingly, Plaintiff and the other Class members have suffered injury in fact, including lost money or property, as a result of FCA's misrepresentations and/or omissions.

164.   Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by FCA under CAL. BUS. & PROF. CODE § 17200.

165.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin FCA from continuing its unfair, unlawful, and/or deceptive practices; to restore to Plaintiff and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE §§ 17203 & 3345; and for such other relief set forth below.

## COUNT VII
### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE § 17500, ET SEQ.)
### (On behalf of the California Subclass)

166.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

167.   Plaintiff brings this Count on behalf of the California Subclass.

168.   CAL. BUS. & PROF. CODE § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the

public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

169.   FCA caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to FCA, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

170.   FCA has violated CAL. BUS. & PROF. CODE § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of Class Vehicles, as set forth in this Complaint, were material and likely to deceive a reasonable consumer.

171.   Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of FCA's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of FCA with respect to the safety, performance, and/or reliability of the Class Vehicles.

172.   FCA's representations turned out not to be true because the Class Vehicles are distributed with the Defect in the Original Fan, rendering essential

vehicle functions inoperative and placing Plaintiff and the Class at risk of injury. Had Plaintiff and the other Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them as they did. Accordingly, Plaintiffs and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

173.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of FCA's business. FCA's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

174.   Plaintiff, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin FCA from continuing their unfair, unlawful, and/or deceptive practices, to restore to Plaintiff and the other Class members any money FCA acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT VIII**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR**
**TRADE PRACTICES ACT**
**(FLA. STAT. § 501.201, ET SEQ.)**
**(On Behalf of the Florida Subclass)**

175.   Plaintiff Yates ("Plaintiff," for purposes of all Florida Subclass Counts) incorporates by reference all preceding allegations as though fully set forth herein.

176.   Plaintiff brings this claim on behalf of the Florida Subclass.

177.   Plaintiff and Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

178.   Defendant was engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

179.   Defendant omitted disclosure of the known and material fact that the Original Fan possessed the Defect. This conduct constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices within the meaning of Fla. Stat. § 501.204, *et seq.*

180.   A reasonable consumer, like Plaintiff, would be deceived by Defendant's conduct in promoting the Class Vehicles without disclosing information concerning the Defect in the Original Fans.

181.   As described above, Plaintiff and the Class suffered damages because the Class Vehicles possess the Defect in the Original Fans. The Defect caused Plaintiff and many Florida Subclass members to sustain damages in the form of costs to purchase and/or install the Replacement Fan. Florida Subclass members who have not already been forced to purchase and/or install the Replacement Fan are substantially certain to have to well before the conclusion of the anticipated usable life of the Class Vehicles.

182.   Because the Class Vehicles with the Original Fans do not function as advertised, Defendant caused Plaintiff's damages, which can be measured with specificity based upon, inter alia, the cost of parts and labor to secure and complete installation of the Replacement Fans.

183.   As a result of Defendant's misrepresentations, Plaintiff suffered actual damages within the meaning of Fla. Stat. § 501.211, because the Plaintiff was forced to pay for parts and labor for replacement of the Original Fan.

## COUNT IX
## BREACH OF IMPLIED WARRANTY
## (FLA STAT. §§ 672.314-315)
## (On Behalf of the Florida Subclass)

184.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

185.   Plaintiff brings this Count on behalf of the Florida Subclass.

186.   FCA designed, developed, manufactured, distributed, and marketed Class Vehicles for purposes of sale to retail buyers.

187.   Defendant impliedly warranted that the Class Vehicles, and the cooling fans within them, were properly designed, developed, tested, manufactured, distributed, marketed, and sold, and that the designs and materials were proper and of workmanlike quality.

188.   Additionally, Fla. Stat. § 672.314-315 (Uniform Commercial Code) implies warranties of merchantability and fitness for a particular purpose.

189.   The Class Vehicles, owing to the Defect in the Original Fans, are not merchantable because they have a propensity to fail prematurely risking engine fires and destruction of the vehicles, as well as the safety of the occupants of the Class Vehicles. This condition renders the Class Vehicles unfit for their ordinary purpose, and making the Class Vehicles objectionable in the trade.

190.   FCA knew that Plaintiff and the Class members would use the Class Vehicles, and thereby the Original Fans, as they were intended to be used, and FCA should have used its own skill and judgment in the industry to furnish suitable materials for use in normal vehicular applications, as FCA did in the Replacement Fans. The Class Vehicles, and more precisely, the Original Fans, are not fit for their intended purpose because they do not function properly throughout their expected useful life.

191.   FCA breached said warranties by failing to provide adequate and proper designs, calculations, or materials for the production of the Original Fans installed in the Class Vehicles.

192.   The Class Vehicles in general, and the Original Fans, in particular fail to perform in accordance with the reasonable expectations of consumers such as Plaintiff and Class members to have properly functioning cooling fans.

193.   FCA had, and has, a duty and responsibility to disclose to the consuming public the foreseeable risks associated with the use of the Class Vehicles; FCA further had, and has, a duty not to put defective products on the market.

194.   But for FCA's breach of implied warranty, Plaintiff and the Class would not have sustained damages in the form of excessive maintenance costs

195.   As a direct and proximate result of the breach of said warranties, Plaintiff and the Florida Subclass have suffered and will continue to suffer damages for having to pay to replace the Defect in the Original Fans, as alleged herein, in an amount to be determined at trial.

196.   Plaintiff, on behalf of himself and all others similarly situated, demands judgment against FCA for compensatory damages, for the establishment of a common fund, plus attorneys' fees, interest and costs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class and Subclasses, respectfully request that the Court enter judgment against Defendant and in favor of Plaintiffs, the Class, and Subclasses, and award the following relief:

A.   Certification of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Subclass, and Plaintiffs' counsel as counsel for the Class and Subclass;

B.     An order awarding declaratory relief and temporarily and permanently enjoining FCA from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.     Appropriate injunctive relief;

D.     A declaration that FCA is financially responsible for all Class notice and the administration of Class relief;

E.     An order awarding any applicable statutory and civil penalties;

F.     An order requiring FCA to pay both pre- and post-judgment interest on any amounts awarded;

G.     An award of costs, expenses, and attorneys' fees as permitted by law; and

H.     Such other or further relief as the Court may deem appropriate, just, and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial for all claims so triable.

Dated: February 11, 2019             Respectfully submitted,

_/s/ E. Powell Miller_____
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852

epm@millerlawpc.com
ssa@millerlawpc.com

William H. Anderson
Matthew K. Handley
George F. Farah
**HANDLEY FARAH & ANDERSON PLLC**
777 6th Street, NW—Eleventh Floor
Washington, DC 20001
Telephone: (202) 559-2433
Facsimile: (866)-912-8897
wanderson@hfajustice.com
mhandley@hfajustice.com
gfarah@hfajustice.com

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**SAUDER SCHELKOPF**
555 Lancaster Avenue
Berwyn, PA 19312
Telephone: (888) 711-9975
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com